DARÍO CEDÓ RODRÍGUEZ, Plaintiff and Appellant, *v.* MARTÍN LABOY, Defendant and Appellee.

No. 11501. Argued June 11, 1956.—Decided December 13, 1956.

*Enrique Báez García* for appellant.  *Eugenio Sánchez Ruiz* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

This is an action brought by Darío Cedó Rodríguez to revendicate a lot which is part of certain property owned by him and on which stands a house belonging to defendant Martín Laboy.[1]

The lower court dismissed the complaint after a trial on the merits on the ground that the action for revendication did not lie because there was no issue on the dominion title of plaintiff's lot, and that, since the defendant is a bona fide builder on another's land, the proper action was an action of accession.  In this connection, the court stated: "The defendant in the case at bar is a possessor in good faith, derived from the good faith of the vendor in constructing or building upon authorization received from the Port Captain, and he cannot be ejected from the land on which his house is built until the cost of construction is paid to him." [2]

The main question for decision in this appeal is whether defendant-appellee is a bona fide builder, his rights being consequently governed by the provisions of § 297 of the Civil Code (1930 ed.), 31 L.P.R.A. § 1164,[3] or, on the contrary,

---

[1] In the prayer of the complaint plaintiff moved for a pronouncement that he was the sole owner of the lot, and that the defendant was bound to demolish and remove the house standing thereon.

[2] The court also stated that, even if the action were regarded as one of accession, it could not define the rights of the parties as respects the defendant's structure, the cost of which—value of the materials plus labor —was not revealed by the evidence.

[3] This section provides:

"The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own the work, sowing or planting, by previously paying the indemnity specified in sections 1468 and 1469 of this title, or to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent.—Civil Code, 1930, § 297."

whether he is a builder in bad faith, in which case his rights would be governed by §§ 298 and 299 of the Civil Code, 31 L.P.R.A. §§ 1165 and 1166.[4]

The judgment appealed from would be correct if the appellee is a bona fide builder. Otherwise the complaint should have prospered.

■■ There is no dispute that appellant Cedó Rodríguez is the owner of the lot where appellee Martín Laboy's house was erected. That lot is part of a property which was recorded in the Registry of Property in the name of appellant long before defendant's predecessor in title built thereon. The house was constructed on that lot by Manuel Nieves Bonet without the consent of the owner of the land. In 1953, Nieves Bonet sold it to appellee Laboy. There does not exist, and never existed, any contract between the owner of the land and the owners of the house for the use and enjoyment of the lot on which the house is standing, but the evidence shows, as stated by the lower court, that the Port Captain authorized Nieves Bonet to build thereon under the theory or in the belief that the land belonged to the government. The People of Puerto Rico had at the time brought an action against Cedó Rodríguez claiming the ownership of the property, which was thereafter decided against The People.

The lower court, as has been noted, held that the defendant is a bona fide builder. Is this conclusion justified? Let us see.

---

[4] These two sections provide:

"§ 1165. Bad faith of builder

"He who builds, plants, or sows in bad faith on another's land, loses what he has built, planted or sown, without having any right to indemnity. —Civil Code, 1930, § 298.

"§ 1166.—Demolition of work and restoration to former condition

"The owner of the land on which any one has built, planted or sown in bad faith, may exact the demolition of the work or the removal of the planting or sowing and the replacing of everything in its former condition, at the expense of the person who built, planted or sowed.—Civil Code, 1930, § 299."

Sections 297 and 298 of the Civil Code do not define the term good faith in the case of persons who build, sow, or plant on another's land; but its § 293—31 L.P.R.A. § 1146—defines a bona fide possessor as follows:

"§ 1146.  Bona fide possessor defined

"He is *bona fide* possessor who possesses as owner by virtue of a title sufficient in its terms and conditions to transfer the ownership, and the defects of which he is ignorant of.  *Bona fide* possession ceases from the moment the possessor becomes acquainted with the defects of the title, or through a suit instituted by the owner of the thing to recover the same.—Civil Code, 1930, § 293."

In dealing with Possession and the Kinds Thereof, the Code again defines a bona fide possessor; it also defines a possessor in bad faith.  In this connection, § 363—31 L.P.R.A. § 1424—provides:

"§ 1424.  Bona fide possessor; possessor in bad faith

"A *bona fide* possessor is deemed to be the person who is not aware that there exists in his title or in the manner of acquiring it, any flaw invalidating the same.

"A possessor in bad faith is deemed to be any person possessing in any case contrary to the above.—Civil Code, 1930, § 363."

"Good faith," says § 364, 31 L.P.R.A. § 1425—"is always presumed, and any person averring bad faith on the part of a possessor, is bound to prove the same."

In construing the foregoing sections, we have said that a possessor in good faith is one who believes that he acquired the thing from a person who was the owner thereof and could convey his title, or one who is ignorant of any defects invalidating his title or manner of acquisition; also that good faith is compatible with a title invalidated by a defect, provided the possessor is ignorant thereof or believes that it does not exist.  *Martorell et al.* v. *J. Ochoa & Brother et al.*, 25 P.R.R. 707; *Larracuenta* v. *Fabián*, 56 P.R.R. 743. In *Lluberas* v. *Mario Mercado e Hijos*, 75 P.R.R. 7, we cited

with approval the following commentary by text writer Scaevola;[*]

" '. . . strictly speaking, possession in good faith exists when the possessor believes that he possesses by virtue of a just title, because he is unaware of the defects thereof . . . that the necessary requirements for the existence of possession in good faith are: title, defects in the title, unawareness by the possessor of such defects. The three must coexist . . .'
"and that (p. 227) :
" '. . . a person who possesses a thing without title, and who has not received the thing from another person by any of the means of conveyance, should at least understand that he is possessing something which is not his own and, therefore, that he is not possessing in good faith . . .' " (75 P.R.R. 14.)

And in *Capó* v. *A. Hartman & Co.*, 57 P.R.R. 190, we cited at p. 196 a similar commentary by text writer Manresa, which reads as follows:

" 'Section 433 provides: Every person who is unaware of any flaw in his title or in the manner of its acquisition by which it is invalidated, shall be deemed a possessor in good faith. According to this definition, in order that good faith may exist, it is indispensable that there should be: (1) a title or mode of acquisition; (2) flaws in said title or mode; (3) ignorance of said flaws by the possessor, and as an immediate consequence thereof, a reasoned belief on his part that the thing or right possessed belongs to him.' Manresa, *Comentarios al Código Civil* (1910 ed.), vol. 4, p. 93."

Castán Tobeñas expresses a similar view when he says:

"We already stated that § 433 of our Code defines bona fide possession from its negative point of view (*ignorance* of the defects of the acquisition) in stating that 'Every person who is unaware of any flaw in his title or in the manner of its acquisition by which it is invalidated, shall be deemed a possessor in good faith,' whereas § 1950 treats it from its positive aspect (*belief* in the legality of the acquisition). Both views

---

[*] Vol. 8, p. 226 (1948 ed.).

intermix and also bear relation to the existence of a title from which good faith is derived.

"Bona fide possession is therefore a species of the civil possession, characterized by the concurrence of these requirements: legal title or act which appears to be a legal acquisition, and ignorance of the possessor of the defects which invalidate or render void such acquisition." 2 Castán, *Derecho Civil Español* 398–99.

As to builders on another's land, some text writers have defined the terms *good faith* and *bad faith* as we shall readily see. Says Scaevola:

"The second paragraph of the section under comment [§ 364 of the Spanish Civil Code, equivalent to our § 300] defines or explains what is to be meant by bad faith on the part of the owner of the land built upon, planted or sowed. Yet, this definition or explanation does not apply also to the builder, planter, or sower. In view of this omission, what is meant by acting in good or in bad faith on the part of one who builds, plants, or sows on another's land? Would it be proper to invoke § 433 as an analogous provision for the definition of this term? Apart from the inadequacy of regarding as an acceder in good faith one who is in an adverse position, these definitions, which are very adequate for possessors with title, are rather out of plumb in the case of actions ordinarily arising from the right of accession. In our opinion, the owner by accession will act in good faith whenever he believes that he has the right to build, plant, or sow on the land where he does so, whether on the authority of some title, on some misinterpreted authorization, on an alleged extension of a lease, on the owner's tolerance, or for some other similar cause. And there will be bad faith whenever those who build, plant, or sow know, or cannot help knowing, that they cannot in any way dispose of another's land for those purposes. Without defining these most essential modalities, it is impossible to determine with certainty and clarity the right which is to prevail in each case of accession." VI Scaevola, *Código Civil Español* 594–95.

After referring to a possessor in good faith and to a possessor in bad faith, Manresa further comments:

"Naturally, all this applies in the case of a possessor, but in any other case we must bear in mind the attendant circumstances of each case in order to determine whether or not the builder knew that he was building on another's land." 3 Manresa, *Código Civil Español* 215.

In view of the foregoing, we cannot agree with the lower court that defendant Laboy is a bona fide builder. Nieves Bonet, his predecessor in title, never held the possession in good faith. His possession did not derive from any title, either valid or invalidated. He built on a lot which he knew belonged to plaintiff, because it was so recorded in the Registry of Property. He did not obtain the consent or authorization, neither express nor implied, of the owner to build on the lot. The permission allegedly granted by the Port Captain is not sufficient to convert him into a bona fide builder, even assuming that such employee of The People of Puerto Rico was empowered by law to transmit the use of government land.[5] The land belonged to plaintiff and not to the State.

The action of revendication brought by The People of Puerto Rico against appellant did not vest the former with any title to the property in litigation. There can be no question here as to the owner of the property on the wrong interpretation of an authorization to build. If the house had been built by The People of Puerto Rico, the latter would be a builder in bad faith. We fail to see how the defendant can be in a better position than The People of Puerto Rico. He is a builder in bad faith and we so hold.

The judgment will be reversed and a new judgment rendered sustaining the complaint, with costs.

Mr. Justice Belaval dissented.

---

[5] We have been unable to find any legal provision authorizing the Port Captain to transfer, either by lease, sale, or otherwise, lands of The People of Puerto Rico. See § 135 of the Political Code.